OPINION
In May 1994, plaintiff Party Dock, Inc., entered into an agreement with Airway Party Dock, Inc. ("Airway"), to purchase Airway's convenience mart and liquor permit, which allowed alcoholic beverages to be sold on the premises. Pending approval by the Liquor Control Commission ("Commission"), the parties agreed that Party Dock would operate the business. Party Dock, whose sole shareholder is plaintiff Ram Nugooru, was represented in connection with the sale/purchase agreement by defendant, Fuad Nasrallah. Airway, who is not a party to this action, was represented by independent counsel.
In April, and again in June 1995, Party Dock made several sales of alcoholic beverages to underage individuals in violation of R.C. 4301.69. These sales occurred before the sale of the business and transfer of the liquor permit to Party Dock, and caused the Commission to file charges against the permit held by Airway.
Two of the charged violations were noticed for a hearing before the Commission on February 6, 1996. However, although it was notified of the hearing, Airway failed to appear. Party Dock, who at the time still did not own either the business or the liquor permit, did appear, represented by defendant. Upon arrival, defendant reached a tentative agreement with the assistant attorney general to consolidate the two scheduled violations with the remaining violations, and to continue the matter for hearing at a future date. After reaching this agreement, defendant and plaintiff Ram Nugooru left; however, they did so before the matter was called before the Commission. When the matter was called for hearing, the Commission found that the permit holder, Airway, had failed to appear. It then entered a default judgment against Airway, and ordered a fine and revocation of its liquor permit effective March 16, 1996.
After learning of the revocation of Airway's permit, Party Dock appealed the Commission's decision to the Montgomery County Court of Common Pleas. On March 21, 1996, that court found the decision of the Commission was supported by reliable, probative, and substantial evidence. It therefore affirmed the finding of liability, but remanded the matter to the Commission for a hearing in mitigation of penalty. The mitigation hearing was held on September 12, 1996, and Airway again failed to appear.
At the hearing, Party Dock admitted that the charged violations occurred, and asked for reconsideration of the penalty imposed by the Commission. Speaking through both defendant and plaintiff Ram Nugooru, Party Dock argued:
 [Defendant]: * * * These cases happened during the first few months of my client's operating the drive-thru. After they happened all the employees who were involved in these incidents have been terminated. Well, their employment has been terminated basically due to failure of checking ID's. And they've installed cameras on the premises for security.
 * * * We realize that — you know, that these incidents did occur and we would ask the commission to reconsider its revocation * * * [.]
 [The Commission]: I've been here for five years. I've never seen three under age violations, 17 years old, 16 years old, 19 years old, in an hour and five minutes. They couldn't even cite your client because they were arresting so fast.
 [Defendant]: It was an employee of my client's. I realize my client is responsible for it, you know, and that employee is no longer employed.
 [The Commission]: Yeah, but it didn't stop. It happened on April 28th. On June the 30th we got a 17-year-old in there again. I mean it's not even close. * * *
 [Plaintiff]: Chairman, if you'll give me a few minutes, I would like to explain. You know, we were new in the business. My profession is not owning a drive-thru. * * * We hired 22, 23-year-old fellows, you know, from the neighborhood. They do this kind of thing. * * * That's why we installed security cameras all over the premises and make sure they strictly enforce this that they have to check the ID's. And I — unfortunately, as soon as I left the premises they did this. If I was there for the next five minutes I would have avoided selling to anybody. That's not tolerable, you know. And since then we have taken every measure not to happen [sic] this again. [Tr. 7-10.]
Party Dock's admission and mitigation testimony to the contrary, the Commission again ordered the revocation of Airway's permit effective October 17, 1996. Upon receiving the Commission's ruling, defendant filed an appeal and obtained a stay pending a decision from the Montgomery County Court of Common Pleas. That court issued a decision affirming the Commission on April 8, 1997.
According to defendant, he was not notified, and did not receive a copy of the court's April 8, 1997 decision. As such, he did not notify Party Dock that Airway's permit had been revoked, and Party Dock continued its sale of alcoholic beverages under the permit until a search warrant was executed on October 22, 1997. As a result of the execution of the warrant, Party Dock claims that approximately $25,000 worth of inventory was seized.
On October 21, 1998, Party Dock, Inc., Ram Nugooru, and his wife, Sri Nugooru, filed this action for legal malpractice against defendant. At the time of filing, the clerk of courts issued an original case schedule which set deadlines for the disclosure of all witnesses and for the filing of dispositive motions. Particularly, the final deadline for the disclosure of witnesses was set for May 5, 1999, and the deadline for the filing of dispositive motions was set for July 28, 1999.
On May 6, 1999, plaintiffs filed an untimely motion for an extension of time to disclose witnesses they intended to call at trial. Plaintiffs' motion was granted, and the deadline for disclosure was extended to July 9, 1999. However, the court admonished the parties stating, "the Court's dispositive motions deadline and discovery cut-off are quickly approaching and [the parties] will be expected to comply with all Court deadlines and procedures."
Despite the extension, plaintiffs did not file a supplemental disclosure, nor did they give any prior notice that they intended to call an expert witness on their behalf. On July 28, 1999, defendant filed a motion for summary judgment in which he argued that he was entitled to judgment on the basis that the plaintiffs did not intend to support their claims of malpractice with expert testimony. However, this motion exceeded the page limit set forth in the local rules of the Franklin County Court of Common Pleas, and defendant was ordered to refile his motion on or before September 17, 1999.
On September 17, defendant refiled, arguing, as in his first motion, that the plaintiffs did not intend to call an expert witness on the issue of the standard of care and, thus, that plaintiffs could not rebut defendant's properly supported motion for summary judgment. On October 7, 1999, plaintiffs filed their brief in opposition to defendant's motion for summary judgment, arguing to the court that expert testimony was not required. However, plaintiffs proceeded to file with their brief an unsigned affidavit from attorney Richard F. Swope. The use of that affidavit was challenged by defendant on October 18, 1999, who argued: (1) that the plaintiffs, despite asking for and receiving an extension of time in which to do so, had never disclosed an expert witness; (2) that the failure to do so was in contravention of the Rules of Civil Procedure, the local rules of court, the trial court's admonition, and the court's case schedule; and (3) that plaintiffs' attempt to use an expert first occurred after defendant's motion for summary judgment had been filed and briefed, after discovery had been completed, and less than three weeks before trial.
In response to defendant's motion, on October 21, 1999, less than twenty days before trial, plaintiffs again moved the court for leave to file a supplemental disclosure of witnesses. In that motion, plaintiffs stated:
 [Defendant has] moved for a Summary Judgment and asserted the necessity of an expert witness. We have indicated in our Memorandum in Opposition Thereto that there is no need for an expert witness because the negligence is obvious and there is much case law supporting that. However, in view of the Defendant`s assertion of this position, we would feel more comfortable in having an expert witness.
The trial court denied plaintiffs' motion, and granted defendant's motion for summary judgment, finding that plaintiffs had failed to come forward with any admissible evidence raising a genuine issue of material fact as to their claims. The trial court explained:
 In their motions the Defendants contend that they are entitled to judgment as a matter of law because the Plaintiff is unable to set forth any admissible expert testimony. In support of their motions the Defendants offer their own affidavits. In their affidavits the Defendants testify that they exercised the knowledge, skill, and ability ordinarily possessed and exercised by members of the legal profession under similar circumstances and contend that their representation was not the proximate cause of the Plaintiffs' loss.
 In response, the Plaintiffs contend that expert testimony is not required because the Defendants' malpractice is so obvious that it may be determined as a matter of law. Moreover, the Plaintiffs offer the Court the affidavit of attorney Richard Swope to demonstrate that they are able to set forth expert testimony regarding the Defendants' breach of the relevant standard of care.
 The Court does not believe the instant matter involves one of the rare instances in which expert testimony is not required in order to establish a legal malpractice claim because the Plaintiffs' claims question the legal strategies exercised by the Defendants in the underlying action and their professional judgment. The Court does not believe that these matters are within the ordinary knowledge or experience of laymen or that the Defendants' alleged actions constitute malpractice as a matter of law. * * *
The trial court continued:
 [Mr. Swope] was not identified as an expert witness in accordance with the Court's Local Rules and the Court's Case Scheduling Order. The Court's Scheduling Order clearly and unambiguously provides that the parties were required to identify all of their witnesses on or before May 5, 1999. The Plaintiffs failed to identify and disclose Mr. Swope as a witness. Loc.R. 43.04 provides that any witness not disclosed in compliance with the local rules and the Court's Scheduling Order may not be called to testify at trial. * * *
 * * * The Plaintiffs moved the court for leave to supplement their witness disclosures on October 21, 1999, 20 days before trial. Parties will not be allowed to wait until a Motion for Summary Judgment is filed to find the deficiencies in their case and then supplement their witness list to correct the defect. The need for expert testimony in a legal malpractice case is a well known concept and the Plaintiff should have been aware of this when the action was filed. * * *
From this decision, plaintiffs appeal raising the following two assignments of error:
 [I.] The court erred in finding that the testimony of an expert witness was necessary to Party Dock's case, and in granting summary judgment on the basis there would be no such testimony at trial.
 [II.] The court erred in excluding the affidavit of Party Dock's expert witness on the ground that witness was not disclosed in a timely fashion and therefore would not be permitted to testify at trial.
In order to obtain summary judgment, viewing the evidence in a light most favorable to plaintiffs, defendant must establish: (1) that there is no genuine issue as to any material fact; (2) that he is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, which conclusion is adverse to the plaintiffs. Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64. Civ.R. 56(C) provides:
 * * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * *
In Dresher v. Burt (1996), 75 Ohio St.3d 280, the Ohio Supreme Court explained that when a party moves for summary judgment, that party bears the initial burden of demonstrating no genuine issue of material fact exists concerning one or more essential elements of the nonmoving party's case. Id. at 292. To do so, the moving party must point to, or identify, those portions of the record, which, when viewed in a light most favorable to the nonmoving party, demonstrate the absence of a genuine issue of material fact. Id. at 292-293.
Only after a moving party carries this burden does the nonmoving party have a reciprocal burden of action. Although the court always views the evidence in a light most favorable to the nonmoving party, the nonmoving party must rebut a properly supported motion with specific facts and/or affidavits showing that a genuine issue of material fact exists. Civ.R. 56(E);Dresher, supra. The nonmoving party need not try his or her case at this level, but he or she must produce more than a scintilla of evidence in support of his or her claim. Id. See, also, Wing v.Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108, 111, following Celotex v. Catrett (1986), 477 U.S. 317, 106 S.Ct. 2548.
Plaintiffs' complaint is for legal malpractice. In order to establish a cause of action for legal malpractice, plaintiffs must show: (1) the existence of an attorney/client relationship from which the defendant owes a duty or obligation to the plaintiffs; (2) that the defendant breached that duty by failing to conform to the standard of care required by law; and (3) that the defendant's breach proximately caused injury or damage to the plaintiffs. Vahila v. Hall (1997), 77 Ohio St.3d 421,422; Krahn v. Kinney (1989), 43 Ohio St.3d 103.
The key issue in this case is whether plaintiffs have come forward with competent evidence on the applicable standard of care. In their complaint, plaintiffs set forth three claims. First, plaintiffs allege the defendant rendered improper advice regarding the charges brought by the Commission against Airway. Second, plaintiffs argue that defendant negligently relied upon the oral agreement for a continuance, leaving the February 6, 1996 hearing before the case against Airway had been called. Third, plaintiffs allege that defendant failed to keep himself apprised of the status of the proceedings against Airway and, for that reason, failed to notify Party Dock of the April 8, 1997 decision which affirmed the revocation of Airway's liquor permit.
In his affidavit, defendant testifies that he exercised the degree of knowledge, skill, and care ordinarily possessed and exercised by members of the legal profession under the same or similar circumstances. Defendant also offers his professional opinion that his representation was in no way the proximate cause of the plaintiffs' claimed damages.
Having supported his motion with sufficient evidence, plaintiffs are required to come forward with evidence sufficient to demonstrate that defendant's advice concerning the charged violations, decision to leave the first hearing having agreed to a continuance, and failure to notify plaintiffs of the ruling affirming the revocation of Airway's liquor permit, fell below the level of competence normally exercised by other members of the legal community.
Having reviewed the nature of the plaintiffs' claims, we agree with the trial court that expert testimony as to the applicable standard of care is required. In all but a few cases, expert testimony is required to support allegations of professional malpractice. Bruni v. Tatsumi (1976), 46 Ohio St.2d 127,130. The exception, which plaintiffs argue is applicable here, comes into play only when the breach is so obvious that it is within the ordinary knowledge and experience of laymen. Bloomv. Dieckmann (1983), 11 Ohio App.3d 202, 203. See, also, McInnisv. Hyatt Legal Clinics (1984), 10 Ohio St.3d 112.
In this case, we are unable to find that defendant's negligence, if any, is capable of being determined by laymen without the assistance of one or more expert witnesses. The legal issues presented by the plaintiffs (whether it is, or is not, acceptable and appropriate for an attorney to rely upon representations of opposing counsel; whether it is negligent for an attorney to wait for a trial court's decision to be forwarded; and whether the defendant's advice concerning the appropriate course of action for Party Dock to follow in light of the charges brought by the Commission against Airway was improper), are not matters within the ordinary knowledge of laymen. Accordingly, plaintiffs' first assignment of error is overruled.
In their second assignment of error, plaintiffs assert that it was error for the trial court to refuse to grant them another continuance within which to disclose their expert. Although plaintiffs openly concede that they failed to comply with the case schedule as modified by the trial court, the Rules of Civil Procedure, and the local rules of the trial court, they argue that the trial court should have allowed them to disclose their expert witness only days before trial.
In support of this position, plaintiffs' counsel states:
 * * * Plaintiff's counsel has had extensive, prior experience in attorney malpractice cases, and he was firmly of the opinion that no expert was needed. In fact, as noted earlier, [defendant] had filed the first version of his Summary Judgment Motion in July (which exceeded the 15 page limitation) so Plaintiff was forewarned at that time that [defendant] was taking the position that expert testimony was necessary. So, it is surely not as if this is a matter which had been forgotten or overlooked, it was simply a matter of strategy. * * *
As noted, plaintiffs also took this strategic position before the trial court, arguing that expert testimony was not necessary, and for that reason they had made the decision to forgo calling an expert. It is not the duty of the trial court nor this court to save the plaintiffs from the ramifications of their strategic or tactical decisions. Plaintiffs admit that their failure to disclose an expert witness was not due to oversight or some form of excusable neglect. Rather, plaintiffs obtained an extension of the deadline to disclose their intention to use an expert witness, but later chose not to do so even though they were on notice that defendant was seeking summary judgment on the basis that expert testimony is required. As such, this is not a situation where the trial court has abused its discretion by failing to accommodate an untimely disclosure. Accordingly, plaintiffs' second assignment of error is also overruled.
Having overruled both of plaintiffs' assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.